GREEN KAY CORPORATION, ET AL. *v.* UNITED STATES (No. 4353)[1]

---

[1] C. A. D. 193.

United States Court of Customs and Patent Appeals, February 2, 1942

*John R. Rafter* for appellants.

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument December 2, 1941, by Mr. Rafter and Mr. Rao]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appellants imported at the port of New York a number of shipments of malleable cast-iron pipe fittings in the form of elbows, tees, and couplings, which merchandise the Collector of Customs classified under paragraph 397, Tariff Act of 1930, as "Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, * * * whether partly or wholly manufactured," and assessed duty thereon at 45 per centum ad valorem.

Identical protests were filed against the action of the collector in so assessing and levying duty on said shipments. At the trial below, all the protests were consolidated and the case was submitted upon a stipulation of facts.

It was claimed by the protestants in their original protests and by amendment thereto that the merchandise was dutiable under paragraph 327 of said tariff act as:

(1) "Cast-iron pipe of every description";

(2) "all castings of iron * * * which have been * * * otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts" at 20 per centum ad valorem; or

(3) "castings of malleable iron not specially provided for" at 20 per centum ad valorem.

It was also alternatively claimed that the merchandise, if not dutiable under paragraph 327, should have been classified for duty purposes under paragraph 328 as:

(4) "and all other finished or unfinished iron or steel tubes not specially provided for," at 25 per centum ad valorem.

It is claimed that if the merchandise is classifiable under provision (1) it would be dutiable at 15 per centum ad valorem by virtue of the foreign trade agreement entered into between France and the United States which was concluded on May 6, 1936, proclaimed by the President of the United States on May 16, 1936, and, (insofar as it relates to concessions by the United States to France) published in T. D. 48316, 69 Treas. Dec. 853.

The United States Customs Court, Second Division, overruled each of appellants' protest claims and held that the merchandise had been properly assessed with duty, and appellants have here appealed from the judgment of said court.

The pertinent part of paragraph 327, *supra*, with italics and numbers inserted which are self-explanatory, reads as follows:

PAR. 327. [1] *Cast-iron pipe of every description*, and cast-iron fittings for cast-iron pipe, 25 per centum ad valorem [15 per centum ad valorem by virtue of the aforesaid trade agreement]; cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, but not including electric irons, and castings and vessels wholly of cast iron, including [2] *all castings of iron* or cast-iron plates which have been chiseled, drilled, machined, or otherwise *advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished* machine parts; [3] *castings of malleable iron not specially provided for;*   *   *   *   20 per centum ad valorem;   *   *   *.

Paragraph 328 similarily emphasized reads:

PAR. 328. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes' pipes, flues, and stays, not thinner than sixty-five one-thousandths of one inch, if not less than three-eighths of one inch in diameter, three-fourths of 1 cent per pound; if less than three-eighths of one inch and not less than one-fourth of one inch in diameter, 1¼ cents per pound; if less than one-fourth of one inch in diameter, 1¾ cents per pound: *Provided*, That no tubes, pipes, flues, or stays made of charcoal iron shall be subject to a less rate of duty than 1¼ cents per pound; cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; welded cylindrical furnaces, tubes and flues made from plate metal, whether corrugated, ribbed, or otherwise reinforced against collapsing pressure, [4] *and all other finished or unfinished iron or steel tubes not specially provided for*, 25· per centum ad valorem; flexible metal tubing or hose, whether covered with wire or other material, including any appliances or attachments affixed thereto, not specially provided for, and rigid iron or steel tubes or pipes prepared and lined or coated in any manner suitable for use as conduits for electrical conductors, 30 per centum ad valorem.

Samples of pipe fittings stipulated to be the same in all material respects as the merchandise in question were admitted in evidence as collective exhibit 1.  They are the ordinary malleable cast-iron pipe fittings in the form of elbows, tees, and couplings, apparently intended for pipe of from 1 inch to 2¼ inches in diameter.  They are galvanized and threaded, and are ready for use.  The only other evidence in the case consists of a stipulation of facts which is as follows:

It is hereby stipulated and agreed:

1. That the merchandise covered by the above-numbered protests consists of malleable cast-iron pipe fittings in the form of elbows, tees and couplings of the sizes described on the consular invoices thereof.

2. That said fittings are short pipes or tubes which are used to connect longer pipes or tubes of iron or steel in the transportation of water, gas or oil, but that they are not used to connect cast-iron pipes.

3. That said fittings are composed of cast-iron; that they are not made of charcoal iron; and that the material thereof does not contain any metallic element or alloy which would subject them to duty under paragraph 305 of the Tariff Act of 1930.

4. That said fittings were made by the casting process and were then malleableized, then galvanized and then threaded; that they are not welded, seamed or jointed; and that, except as stated herein, they were not advanced in condition by any process or operation subsequent to the casting process.

5. That the malleableizing of said fittings consisted of a process whereby they were slowly cooled which had the effect of making them more ductile; that the galvanizing of said fittings consisted of a process whereby they were coated with a solution of zinc which had the effect of protecting them from rust; and that the threading of said fittings consisted of a machining operation which had the effect of enabling them to be connected with longer pipes or tubes of corresponding diameters and correspondingly threaded.

6. That said fittings are of standard types and sizes such as are regularly carried in stock by plumbing supply houses for use in the installation or repair of water, gas or oil systems in buildings where water, gas or oil is transported by means of iron or steel pipes or tubes and where said fittings serve to carry the water, gas or oil in any desired direction; that they are not related to any particular water, gas or oil system but are used interchangeably in a great variety of such systems to connect a great variety of pipes or tubes; that they are not parts of the pipes or tubes which they connect; that they are individual units in no way related to each other as parts of a whole; and that as imported they are in a finished condition ready for use.

7. That pipe fittings which are not made by the casting process may be and are used in said water, gas and oil systems to connect the pipes or tubes therein; and that certain cast-iron fittings for cast-iron pipe, such as valves and caps, are not in the form of pipes or tubes.

Appellants in this court, while abandoning none of their protest claims, state that they rely chiefly on their claim that the merchandise is dutiable under the second above-italicized provision in paragraph 327 as "castings of iron   *   *   *   which have been   *   *   *   advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts," and since this is appellants' main claim, we will decide this question, and that involving appellants' third claim, last, and first dispose of claims (1) and (4).

As to appellants' claim (1) that the merchandise should be held to be "Cast-iron pipe of every description," it is contended that under the stipulated facts, paragraph 2, the fittings are designated as short pipes or tubes, which they contend they are, for the reason that they are tubular in form and that their length is greater than their diameter;

that they are therefore pipes as distinguished from rings or "other forms of metal" and that they are used as pipes for the conveyance of water, gas, or oil; that the threaded area does not cover the entire interior of the same, and that, therefore, they function as pipes as well as connectors or fittings. Appellants point out that there are fittings which are in the form of caps or valves and are not in the form of pipes or tubes.

Appellants' contention under the first provision of paragraph 327 may be disposed of summarily by saying that in that provision itself Congress has distinguished between cast-iron pipe of every description and cast-iron fittings for such cast-iron pipes. It is stipulated that the fittings at bar are not used to connect cast-iron pipes. This fact, however, does not lessen the force of the conclusion that Congress for tariff purposes has definitely distinguished between pipes and fittings. We hold, therefore, that the merchandise at bar is not dutiable under the said provision for "Cast-iron pipe of every description."

As to appellants' alternative claim (4) that the merchandise is dutiable under the provision "all other finished or unfinished iron or steel tubes not specially provided for" under paragraph 328, we think our discussion of claim (1) "all cast-iron pipes of every description" is pertinent to the instant issue. Paragraph 328 which includes tubes, pipes, flues, and stays of certain kinds with certain characteristics not possessed by the involved merchandise, and also includes many other articles wholly dissimilar to the goods before us, has a catch-all provision—"all other finished or unfinished iron or steel tubes not specially provided for." It is to this last-quoted provision that appellants' claim (4) is directed. Even a superficial examination of the paragraph and the subject matter which it contains suggests that material such as that at bar was never intended by Congress to be covered by any of the language therein contained. We are of the opinion, however, that since Congress has, in the Tariff Act of 1930, distinguished between fittings and pipes and has specifically referred to fittings by name, it could not have contemplated that the term "tubes" would include such fittings.

Even though appellants' contention that the word "tube," in one of its meanings, was broad enough to embrace short tubular threaded fittings like those at bar, was correct, it is not thought that Congress used the term "tubes" in that sense. While there are some characteristics of the involved fittings, such as greater length than diameter and their being used for conveying liquids or materials, which also characterize a "tube" as that term is ordinarily understood, we have found no definition of the term "tube" in any of the lexicographical authorities which precisely covers the merchandise at bar as it is represented by collective exhibit 1. We quote from Webster's New International Dictionary:

tube. *n.* 1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire *tube;* a water *tube;* a condenser *tube* * * * the *tubes* of a tubular bridge; a friction *tube;* the *tube* of a musical instrument; bronchial *tube;* a priming *tube,* etc.

* * * The word *tube* is arbitrarily associated with certain articles or devices not customarily called *pipes,* and vice versa, although *tube* and *pipe* are practically synonymous mechanically; as iron *pipe;* glass or rubber *tube;* gas *pipe;* boiler *tube.*

The context of paragraph 328, when compared with that of paragraph 327 suggests that the term "tubes" referred to in the pertinent provision of paragraph 328 was not used with the view of covering a fitting that does little more than connect pipes which, as such, when so connected, are used for many purposes.

We think appellants' claim (2) (upon which they chiefly rely) that the merchandise is dutiable as "all castings of iron * * * advanced [etc.]" and their claim (3) under the provision for "castings of malleable iron not specially provided for" are so closely related as to suggest a consideration of them together. On this phase of the case, appellants in arguing that the merchandise is dutiable under claim (2) do not abandon their claim that it is dutiable under (3) as "castings of malleable iron not specially provided for."

Appellants' counsel argues at great length that although the castings at bar are malleable they nevertheless are castings of iron which have been advanced but not made up into articles, and states in substance that this court's decision in *Dulien Steel Products, Inc., et al.* v. *United States,* 27 C. C. P. A. (Customs) 285, C. A. D. 102, is not sound insofar as it held that Congress had distinguished in said paragraph 327 between "castings of iron * * * advanced [etc.]" and "castings of malleable iron not specially provided for." Appellants' counsel in arguing that Congress had not distinguished between the two kinds of castings suggests (although he does not emphasize the suggestion) that the court was in error in its holding that "In order to make castings of malleable iron it is necessary that iron castings be put through the annealing process as aforesaid," and presents excerpts from certain authorities which would seem to suggest that there are castings of iron which are made from malleable iron, such as malleable pigs, in which there is no malleableizing after casting. This suggestion would seem to be aimed toward the conclusion that Congress, in using the phrase "castings *of malleable iron*" (italics ours), intended that provision to take care of such castings as were made from malleable pigs or from other forms of iron which had been malleableized before casting and that, therefore, Congress had not distinguished between "castings of iron advanced" and malleable iron castings which had been malleableized after casting, such as those at bar. Appellants' further argument in contending that the court was in error in holding that Congress had distinguished

between "castings of iron, advanced," and the merchandise involved in the *Dulien* case, *supra*, which, in respects with which we are here concerned is similar to that at bar, also advances the suggestion that it was probable that the term "castings of malleable iron" was unnecessary in the paragraph at all, and that, as they state frequently occurs, it was carried over without any particular reason.

We find ourselves unable to concur in appellants' view as to the purpose intended by Congress in including the provision "castings of malleable iron not specially provided for" in said paragraph 327, and this conclusion makes necessary a consideration of some of the legislative history involved in the enactment of the paragraph and its predecessors.

We have examined the pertinent provisions of the tariff acts which were enacted during the last century and find the following:

In the act of 1824 (4 Stat. 25) there was no distinction made between castings which were malleable, and castings which were not.

The same is true of the act of 1832 (4 Stat. 583).

In the act of 1842 (5 Stat. 548) there was a provision for "all other castings of iron, not otherwise specified" and for "malleable irons or castings."

In the act of 1846 (9 Stat. 42) no distinction was made between castings which were malleable, and castings which were not.

In the act of 1861 (12 Stat. 178) the provisions were "all other castings of iron not otherwise provided for" and "malleable iron in castings not otherwise provided for."

In the act of 1862 (12 Stat. 543) there was a provision for "all other castings of iron, not otherwise provided for" and one for "malleable iron, and malleable iron castings, not otherwise provided for."

In the act of 1864 (13 Stat. 202) we find Congress providing for "malleable iron in castings, not otherwise provided for" and for "all other castings of iron, not otherwise provided for."

In the act of 1883 (22 Stat. 488) provision was made for "castings of iron, not specially enumerated or provided for" and for "Malleable iron castings, not specially enumerated or provided for."

In the act of 1890 (26 Stat. 567) provision was made for "castings of iron, not specially provided for" and (for the first time) "Castings of malleable iron not specially provided for."

The same provisions are found in the act of 1897 (30 Stat. 151).

In the act of 1909 (36 Stat. 11) provision was made, for the first time, for castings advanced in condition. Paragraph 147, providing for such castings, and paragraph 148, providing for castings of malleable iron, follow:

PAR. 147. Cast-iron andirons, plates, stove plates, sadirons, tailors' irons, hatters' irons, and castings and vessels wholly of cast iron, eight-tenths of one cent per pound. All castings of iron or cast-iron plates which have been chiseled, drilled,

machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, shall pay two-tenths of one cent per pound more than the rate imposed upon the castings of iron and cast-iron plates hereinbefore provided for.

Par. 148. Castings of malleable iron not specially provided for in this section, seven-tenths of one cent per pound.

In the act of 1913 (38 Stat. 114) the provision for castings, advanced, was put into the same paragraph as the provision for castings, not advanced, together with the provision for castings of malleable iron so that the paragraph reads:

Par. 125. * * * castings and vessels wholly of cast iron, including all castings of iron or cast-iron plates which have been chisled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles or finished machine parts; castings of malleable iron not specially provided for in this section; * * * 10 per centum ad valorem.

In respects with which we are here concerned, the provisions of the Tariff Act of 1913, above referred to, were reenacted into the acts of 1922 and 1930.

At one time during the period covered above, iron castings were dutiable, while malleable castings were free of duty. At other times both articles were dutiable, and malleable castings were given a lower rate than castings of iron. Beginning with the act of 1913, the provisions for iron castings (including iron castings, advanced) and malleable castings were in the same paragraph at the same rate of duty.

Just why Congress changed from the use of the term "malleable iron in castings" in the early tariff acts to "malleable iron castings" in others, and from 1890 to the present used the term "castings of malleable iron," or the reason for the changes in the dutiable status of the two materials, is nowhere made clear. However, a consideration of the context of all the paragraphs suggests no distinction in meaning was intended between "malleable iron castings" and "castings of malleable iron."

That Congress, in the use of the various phrases above quoted, did not intend to distinguish between iron castings which had been malleableized before casting and those which were malleableized after casting seems clear from the rates of duty imposed and the manner in which the subject matter has been treated by it throughout the years. Moreover, the lexicographical and · technical authorities on the subject, including those cited in the *Dulien* case, *supra*, have made little, if any, distinction in this regard, and in defining or discussing malleable castings usually refer to them as castings which have been malleableized after casting by a process of annealing accompanied by slow cooling.

From the foregoing considerations, it seems reasonable to conclude that Congress by the use of the term "castings of malleable iron" in

the Tariff Act of 1930 did not intend to confine that provision to castings which had been made from malleable iron.

· Appellants' claim (3) embraces the contention that the instant castings are castings of malleable iron and that since we have distinguished beween castings which are not malleable and those which are malleable, as are the ones at bar, the merchandise falls within that provision.

It is our view that in order for merchandise to fall under the provision "castings of malleable iron" it is necessary that it be nothing more than a casting. · In this connection it should be noted that provision (2) "all castings of iron * * * advanced" is limited to those which have been "advanced in condition by processes or operations subsequent to the casting process but not made up into articles" and that in a prior provision in the same paragraph there was a provision for "castings and vessels wholly of cast iron" without limitation.

In *United States* v. *Grinnell Co.*, 16 Ct. Cust. Appls. 255, T. D. 42844, cast-iron fittings such as tees, elbows, joints, etc., of various sizes, which had been machined—that is, threaded, and ready for use, were held to be dutiable under the provision of the Tariff Act of · 1922 for "all castings of iron * * * · which have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting process *but not made up into articles or finished machine parts*," [italics ours] although it was there contended that threading and finishing the fittings there involved, which were ready for use, made them finished articles. The court in its decision stated:

* * * In one sense, of course, each is an article * * *. While they are standard stock articles, they have not been "made up" into articles. * * * They are not a part of any particular machine, but may be and are devoted to any one of a great variety of uses, for which, of common knowledge, threaded cast-iron pipe fittings are commonly used.

So, in this instance, following the reasoning of the *Grinnell* case, if Congress had not distinguished between castings of malleable iron and castings of malleable iron which are fittings, we would, as we said in *Dulien Steel Products, Inc., et al.* v. *United States, supra*, be inclined to the view that they were dutiable under the provision for "castings of iron * * * advanced [etc.]" However, adhering to the view that Congress did not intend malleable castings to come within said provision, we must consider whether or not they fall within the provision for "castings of malleable iron, not specially provided for."

Under the holding of the *Grinnell* case, *supra*, it might be contended that the imported fittings are not finished articles and are merely advanced malleable castings. They are not only castings, but they are castings which have become fittings ready to use, even though they have not been finished into some other articles in the sense of the holding in the *Grinnell* case. Congress used no language which

prescribes the character of advancement of such castings as fall within the provision for castings of malleable iron, although it had done so with regard to ordinary cast-iron castings in the preceding clause. If it had intended castings of malleable iron which became finished fittings to be dutiable under the provision for castings of malleable iron, it seems it would have expressly so stated.

We are not privileged to read "castings of malleable iron" out of the statute as has been suggested by appellants' counsel and because of the considerations hereinbefore enumerated, we are constrained to hold and do hold that the term "castings of malleable iron" was never intended to include anything but castings which had not been finished into fittings ready to use, as have been the ones at bar. This construction of the paragraph, we think, gives room for operation of all its provisions and results, as we see it, in no anomaly.

According to the stipulation the instant merchandise consists of elbows, tees, and couplings, which, in the condition imported, are carried in stock by plumbing supply houses for use in the installation or repair of water, gas, or oil systems, which fittings were malleableized after casting, then galvanized, then threaded. They clearly fall within paragraph 397 as wholly manufactured articles composed wholly or in chief value of iron, not specially provided for, and the judgment of the United States Customs Court is *affirmed*.